**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MICHAEL A. DEAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No: 07-3298-CV-S-GAF |
| | ) | |
| SUPT. MICHAEL BOWERSOX, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION**</u>

<u>**FOR SUMMARY JUDGMENT**</u>

Defendants Bowersox, Missouri Department of Corrections ("MDOC"), Cornell, Buckner, Roper, Fisher, Fahnestock, Kemna, Ballinger, Hadley, Rogers, Wade, Wilson, and Leeder move this Court to enter summary judgment in their favor because there are no genuine issues of material fact and they are entitled to judgment as a matter of law, and state the following in support:

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................4

INTRODUCTION ...............................................................................7

STANDARD OF REVIEW ...................................................................7

ARGUMENT ......................................................................................8

    I.    Defendants Bowersox, Buckner, Cornell, Roper, Fisher, Kemna, Wad, Wilson, and Leeder were not personally involved in censoring plaintiffs' publications. ...................................................9

    II.    Defendant Missouri Department of Corrections is not a "person" under 42 U.S.C. §1983. .................................................. 11

    III.    The individual defendants are shielded from liability by the doctrine of qualified immunity. ...................................................... 11

    IV.    SCCC's censorship policy regarding stickers and other unauthorized property is lawful on its face and, as applied, to plaintiff's materials. ....................................................... 14

    V.    SCCC's censorship of magazines containing violent or sexually explicit material was lawful as applied. ...................................... 17

    VI.    Due Process – Letting offenders view censored material ............ 20

    VII.    Equal Protection – Disparate treatment of inmates at other institutions. ................................................................... 22

CONCLUSION ................................................................ 24

Case 6:07-cv-03298-GAF   Document 130   Filed 04/29/13   Page 2 of 25

CERTIFICATE OF SERVICE................................................................... 25

# TABLE OF AUTHORITIES

## **Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........................................ 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 10

*Aubuchon v. Missouri*, 631 F.2d 581 (8th Cir.1980) ...................................... 11

*Beck v. LaFleur*, 257 F.3d 764 (8th Cir. 2001) ................................................. 9

*Bell v. Wolfish*, 441 U.S. 520 (1979)...................................................... 15, 17, 23

*Block v. Rutherford*, 468 U.S. 576 (1984) ........................................................ 17

*Bonner v. Outlaw*, 552 F.3d 673 (8th Cir. 2009) ............................................ 14

*Buford v. Tremayne,* 747 F.2d 445 (8th Cir. 1984) ........................................... 8

*Canton v. Harris*, 489 U.S. 378 (1989)............................................................. 10

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .................................................... 8

*Chesterfield Dev. Corp v. City of Chesterfield*,

      963 F.2d 1102 (8th Cir. 1992).................................................................. 20

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)....................................... 20

*Dawson v. Scurr*, 986 F.2d 257 (8th Cir. 1993) .............................................. 18

*Dean v. Bowersox*, 325 F.App'x 470 (8th Cir. 2009) ....................................... 18

*Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442 (8th Cir.1995) ........ 21

*Goff v. Graves*, 362 F.3d 543 (8th Cir. 2004) .................................................. 16

*Graham v. Connor,* 490 U.S. 386 (1989)........................................................... 20

*Harris v. Bolin*, 950 F.2d 547 (8th Cir. 1991)................................................. 18

Case 6:07-cv-03298-GAF   Document 130   Filed 04/29/13   Page 4 of 25

*Hill v. McKinley*, 311 F.3d 899 (8th Cir. 2002)................................................. 13

*Hosna v. Groose*, 80 F.3d 298 (8th Cir. 1996)....................................... 14, 15, 23

*Hunter v. Bryant*, 502 U.S. 224 (1991) ............................................................ 12

*Kentucky Dep't of Corr. V. Thompson,* 490 U.S. 454 (1989) ........................... 21

*Krout v. Goemmer*, 583 F.3d 557 (2009) ......................................................... 12

*Littrell v. Franklin*, 388 F.3d 578 (8th Cir. 2004) ............................................ 12

*Malley v. Briggs*, 475 U.S. 335 (1986)....................................................... 12, 13

*Martin v. City of Brentwood*, 200 F.3d 1205 (8th Cir. 2000) ........................... 20

*Martin v. Sergent*, 780 F.2d 1334 (8th Cir. 1985) .............................................. 9

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979 (8th Cir. 2004) ..................... 18, 23

*Myers v. Morris*, 810 F.2d 1437 n.16 (8th Cir. 1987) ...................................... 13

*Pearson v. Callahan* 555 U.S. 223 (2009) ........................................................ 12

*Ping v. Raleigh*, 205 F.3d 1347 at 1 (8th Cir. 2000)......................................... 21

*Procunier v. Martinez*, 416 U.S. 396 (1974)........................................ 15, 16, 21

*Rowe v. Norris*, 198 F. App'x 579 (8th Cir. 2006) ........................................... 10

*Sandin v. Conner*, 515 U.S. 472, ----, 115 S.Ct. 2293 (1995) .......................... 14

*Senty-Haugen v. Goodno*, 462 F.3d 876 (8th Cir. 2006).................................. 21

*Shaw v. Murphy*, 532 U.S. 223 (2001). ............................................................ 16

*Sipies v. Kofka*, 419 F.3d 709 (8th Cir. 2005) ................................................. 21

*Thornburgh v. Abbott*, 490 U.S. 401 (1989)........... 13, 14, 15, 16, 18, 19, 21, 23

*Turner v. Safley*, 482 U.S. 78 (1987) ................................................................ 14

5

*U.S. v. Lanier*, 520 U.S. 259 n.7 (1997) ............................................................. 20

*Weiler v. Purkett*, 137 F.3d 1047 (8th Cir. 2000) ............................................. 20

*Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989) ............................ 11

## Statutes, Rules and Other Authorities

42 U.S.C. § 1983 ..................................................................................................... 11

Fed. R. Civ. P. 56 ...................................................................................................... 8

6

# INTRODUCTION

Plaintiffs Dean and Edmonds were incarcerated at South Central Correctional Center (SCCC), a maximum security facility in Licking, Missouri. They bring suit under 42 U.S.C. §1983, challenging the censorship of 79 publications sent to them between 2007 and 2009. Each of these publications was censored by SCCC staff for one of three reasons: 1) portrayal of explicit sex acts, 2) promotion of criminal activity, including violence and illegal drugs, 3) unauthorized property such as stickers or posters. Following an appeal, the remaining claims are an as applied challenge to censorship based on portrayal of explicit sex acts, promotion of violence, and promotion of illegal drugs. Plaintiffs bring both facial and as applied challenges to the censorship of publications based on unauthorized property. Plaintiffs further allege that their 14th Amendment right to due process was violated when they were not allowed to view the censored publications for the purposes of challenging censorship. Finally, plaintiffs claim that defendants violated their 14th Amendment right to equal protection because the same publications were allowed in certain institutions and not others.

# STANDARD OF REVIEW

If there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, a court must grant summary

Case 6:07-cv-03298-GAF   Document 130   Filed 04/29/13   Page 7 of 25

judgment. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment must initially demonstrate the absence of a triable issue. *Celotex,* 477 U.S. at 323. Once a summary judgment motion is properly made and supported, however, the non-moving party may not rest upon the allegations in his pleading, but must instead show evidence which indicates that there is a genuine issue of material fact for trial. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir. 1984). Evidence of a disputed factual issue which is irrelevant, or not significantly probative, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish the elements essential to the party's case and upon which the party will bear the burden of proof at trial. *Celotex,* 477 U.S., at 322-23.

## ARGUMENT

Defendants move that this Court grant them summary judgment pursuant to Fed. R. Civ. P. 56 for several reasons: 1) defendants Bowersox, Buckner, Cornell, Roper, Fisher, Kemna, Wade, Wilson, and Leeder lack sufficient personal involvement; 2)defendant MDOC is not a person and therefore, not subject to suit under §1983; 3) the individual defendants are protected by the doctrine of qualified immunity; 4) the policy that prevented

Case 6:07-cv-03298-GAF   Document 130   Filed 04/29/13   Page 8 of 25

plaintiffs from receiving stickers, posters, and 3-D glasses is constitutional on its face and as applied to plaintiffs' material; 5) the policy censoring plaintiffs' sexually-explicit material, violent material, and material that promotes criminal activity was constitutional as applied to plaintiffs' censored material; 6) plaintiffs fail to state a claim for equal protection; and 7) plaintiffs fail to state a violation of their due process rights.

I.  **Defendants Bowersox, Buckner, Cornell, Roper, Fisher, Kemna, Wade, Wilson, and Leeder were not personally involved in censoring plaintiffs' publications.**

Plaintiffs allege that their First Amendment rights were violated when certain magazines were censored by prison staff. However, plaintiffs have not produced any evidence that nine defendants were personally involved in the censorship of their magazines. In fact, plaintiffs admit that nine defendants had no involvement in the censorship process whatsoever. Accordingly, summary judgment should be granted for defendants Bowersox, Buckner, Cornell, Roper, Fisher, Kemna, Wade, Wilson, and Leeder on the basis of lack of personal involvement.

Personal involvement is a prerequisite to liability under §1983. *Martin v. Sergent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Section 1983 claims require a plaintiff to plead and prove that each defendant was personally involved in the alleged deprivation of a constitutional right. *Beck v. LaFleur*, 257 F.3d 764 (8th Cir. 2001). Personal involvement on the part of a defendant cannot

9

be based upon either respondeat superior or vicarious liability. *Canton v. Harris*, 489 U.S. 378, 385 (1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

A defendant is not liable under section 1983 if his involvement is limited to denying an inmate's grievances. *Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006). In *Rowe*, the 8th Circuit held that the trial court properly dismissed a defendant whose sole involvement in a §1983 claim was denying the plaintiff's grievances. In its decision, the court noted that the defendant's act of denying grievances was "insufficient to impose liability on him." *Id*.

In the present case, plaintiffs name Warden Bowersox because he is the head administrator at SCCC and because of his involvement in the grievance process. (Statement of Facts "SOF" 7-10) Bowersox' position as warden is insufficient for personal involvement under §1983. *See Canton*, 489 U.S. at 385. Defendants Buckner, Cornell, Roper, Fisher, Kemna, Wade, Wilson, and Leeder were named for their involvement in the grievance process (SOF 11-32), but involvement in the grievance process is not sufficient for personal involvement under §1983. *See Rowe*, 198 F. App'x at 580. Therefore, defendants Bowersox, Buckner, Cornell, Roper, Fisher, Kemna, Wade, Wilson, and Leeder should be granted summary judgment because they lack

10

personal involvement.

## II. Defendant Missouri Department of Corrections is not a "person" under 42 U.S.C. §1983.

In their superseding amended complaint, plaintiffs allege several section 1983 claims against the Missouri Department of Corrections (DOC), which is a state agency. However, these claims are improper because state agencies do not qualify as "persons" for the purpose of section 1983. Accordingly, the Court should grant summary judgment for defendant DOC.

Section 1983 states that every "person" who, under color of law deprives a person of their Constitutional rights, privileges, and immunities, shall be liable. 42 U.S.C. § 1983. A state and its agencies are not subject to suit under §1983 because they are not "persons" within the meaning of the statute. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65 (1989); *Aubuchon v. Missouri*, 631 F.2d 581, 582 (8th Cir.1980).

Because DOC is not a person, it cannot be sued under § 1983 for damages or injunctive relief. Accordingly, the Court should grant summary judgment for DOC.

## III. The individual defendants are shielded from liability by the doctrine of qualified immunity.

Plaintiffs allege that their First Amendment rights were violated when defendants censored publications coming into SCCC. However, defendants are shielded from liability because of the doctrine of qualified immunity.

11

Because defendants did not violate a clearly established right of which a reasonable person would have known, they are immune from suit. Accordingly, the Court should grant summary judgment in favor of the defendants.

Qualified immunity shields a public official from liability when his conduct does not violate clearly established rights of which a reasonable person would have known. *Krout v. Goemmer*, 583 F.3d 557, 564 (2009). To determine whether qualified immunity applies, courts examine two factors: 1) whether there has been a violation of a constitutional or statutory right, and 2) whether the right was clearly established such that a reasonable official would have known that his actions were unlawful. *Id*. (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)).

As a matter of public policy, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335-36 (1986). Qualified immunity gives ample room for mistaken judgments. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). This accommodation exists so that officials are not forced to err on the side of caution for fear of being sued. *Id. See also Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (if an official's mistaken judgment was objectively reasonable in light of the information he or she possessed at the time of the alleged violation, then the officer is entitled to the qualified

immunity defense).

The Eighth Circuit has admonished lower courts to refrain from taking a too "broad view" of what constitutes clearly established law. *Hill v. McKinley*, 311 F.3d 899, 901-04 (8th Cir. 2002). This is a fact-specific inquiry because "[q]ualified immunity would be meaningless if it could be defeated merely by the recitation of some well-recognized right and a conclusory allegation that the defendant infringed it." *Myers v. Morris*, 810 F.2d 1437, 1459, n.16 (8th Cir. 1987) (abrogated on other grounds).

Here, the law regarding prisoner speech regulations understandably provides great deference to prison officials: "where the regulations at issue concern the entry of materials into the prison, … a regulation which gives prison authorities broad discretion is appropriate." *Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989). Thus, prison officials are provided with great latitude in determining whether a particular item is properly censored.

Where, as here, prison officials can articulate a legitimate penological interest underlying their decision to censor certain items, they cannot be said to have violated a clearly established right. Such officials did not knowingly violate the law, and were not incompetent; therefore, they are entitled to the defense of qualified immunity. *See Malley*, 475 U.S. at 335-36. Furthermore, as more fully explained in the remainder below, plaintiffs' rights were not violated by defendants' actions. *See infra.*

## IV. SCCC's censorship policy regarding stickers and other unauthorized property is lawful on its face and, as applied, to plaintiffs' materials.

"It is not the role of federal courts to micro-manage state prisons. Instead, 'federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life....'" *Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996) (citing *Sandin v. Conner*, 515 U.S. 472, ----, 115 S.Ct. 2293, 2299 (1995)(citations omitted)).

A regulation on prisoner speech is valid if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). When examining the lawfulness of prisoner speech regulations, courts look to four factors: 1) whether there is a rational connection between the regulation and a neutral, legitimate government interest; 2) whether alternative means exist for inmates to exercise the constitutional right; 3) what impact accommodating the right would have on the prison community 4) whether obvious and easy alternatives exist. *Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989) (discussing the four factors established in *Turner*); *Bonner v. Outlaw*, 552 F.3d 673, 678 (8th Cir. 2009).

Prison officials have a neutral, legitimate government interest in regulating the property that offenders may possess. Correctional facilities are

14

controlled environments in order to maintain the safety and security of the institutions, which house dangerous offenders. (SOF 42)  The Eighth Circuit has found that maintaining the security of a correctional institution is a legitimate penological objective.  *Hosna*, 80 F.3d at 305 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).  MDOC limits the property an offender may possess to lessen the offenders' ability to create, conceal, or transport weapons or escape devices. (SOF 44) Items of property are also limited because of the ability of these items to be used as currency in the correctional facility.  (SOF 44) The use of items as currency in prison can lead to fighting and other disruption. (SOF 44) Stickers, additionally, may be used to transfer drugs. (SOF 44).  Offenders may possess other personal property, so long as it appears on the authorized property list.  (SOF 42)

In determining whether prisoner speech regulations are reasonably related to a legitimate penological interest, courts give great deference to prison officials. *Thornburgh*, 490 U.S. at 407-408 (citing *Procunier v. Martinez*, 416 U.S. 396, 404-405 (1974)). "Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the

Case 6:07-cv-03298-GAF   Document 130   Filed 04/29/13   Page 15 of 25

outside world."[1] *Id.* This deference is appropriate "particularly with respect to decisions that implicate institutional security." *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004). Here, multiple prison officials, including the Director of Adult Institutions for MDOC, have explained the rationale behind the limited property policy and the risks of granting offenders property not found on the authorized property list. (SOF 42, 44)[2]

Regarding regulations on inmate property, courts again give great deference to prison officials. "Proper deference to the informed discretion of

---

[1] The Court reaffirmed this sentiment in *Shaw*, where it stated that "prison officials are to remain the primary arbiters of the problems that arise in prison management. If courts were permitted to enhance constitutional protection based on their assessments of the content of the particular communications, courts would be in a position to assume a greater role in decisions affecting prison administration. *Shaw v. Murphy*, 532 U.S. 223, 230 (2001).

[2] To the extent plaintiffs attempt to challenge the fact that plaintiffs' entire publications were censored on the basis that they contained censored material, courts have upheld the all-or-nothing rule, whereby prison officials withhold in its entirety any publication containing excludable material. *See Thornburgh*, 490 U.S. at 416. Here, mailroom staff are already required to process thousands of pieces of mail every week, giving evidence of the limited resources that support such decisions. (SOF 45)

16

prison authorities demands that they, and not the courts, make the difficult judgments which reconcile conflicting claims affecting the security of the institution, the welfare of the prison staff, and the property rights of the detainees." *Block v. Rutherford*, 468 U.S. 576, 591 (1984) (quoting *Bell v. Wolfish*, 441 U.S. 520, 557 n. 38 (1979)). Here, plaintiffs ask this court to do nothing more than to substitute its judgment for that of the MDOC officials, and thus, plaintiffs' claims should fail.

## V. SCCC's censorship of magazines containing violent or sexually explicit material was lawful as applied.

The Eighth Circuit upheld DOC's regulations denying sexually explicit material and material promoting violence during the appeal phase earlier in this case. Citing a slew of cases recognizing a legitimate government interest behind such regulations, the Eighth Circuit held that plaintiffs' facial challenge was properly dismissed. However, the Court remanded on the issue of plaintiffs' challenges to censorship based on violent and sexually explicit material as applied[3].

The Eighth Circuit has recognized a legitimate government interest

---

[3] Plaintiff Edmonds claims damages for Playboy, March 2009, but that magazine was returned to him in the censorship process. Thus, he has no damages for that publication. (SOF 81-82)

behind regulations denying sexually explicit material and material promoting violence. *Dean v. Bowersox*, 325 F.App'x 470, 472 (8th Cir. 2009). These materials "may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct." *Dawson v. Scurr*, 986 F.2d 257, 261 (8th Cir. 1993) (quoting *Thornburgh*, 490 U.S. at 412). Thus, the Eighth Circuit has found that regulations denying violent material are "related to the institutional needs of maintaining a controlled and secure environment among the prison population." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004). Likewise, the Eighth Circuit has found that regulations denying sexually explicit material do not violate a prisoner's first Amendment rights. *Harris v. Bolin*, 950 F.2d 547, 549 (8th Cir. 1991) (per curiam) (discussing security problems such as fights and increased sexual activity, that were caused by sexually explicit materials in prisoners' cells).

When examining as applied challenges to regulations on prisoner speech, courts again look to the legitimate government interest behind censorship. Thus, the Eighth circuit stated "[a] regulation valid and neutral in other respects may be invalid if it is applied to the particular items in such a way that negates the legitimate concerns." *Murphy,* 372 F.3d at 986.

Here, plaintiffs' censored publications contain sexual penetration, oral sex, and a bodily excretory function (ejaculation). (SOF 87-152) Numerous MDOC officials censored these publications citing concerns of concerns of

18

disorder: specifically sexual aggression and increased sexual activity, inmates trading such materials (and the associated problems), and the detrimental effect that such images could have on certain offenders' rehabilitation. (SOF 87-152) Similarly, plaintiffs' censored publications also contained materials that encouraged violence and criminal activity. (SOF47-86) These images consist of those depicting blood and gore, mutilated bodies, torture, people shooting guns at other people, instructions for how to construct a weapon, and illegal drugs. (SOF 47-86) Numerous MDOC censored these publications citing concerns that such publications, if not censored, would encourage violence and criminal activity. (SOF 47-86) The censorship of these items is rationally related to the penological goal of maintaining the safety and security of the correctional institution, and therefore, does not violate plaintiffs' first amendment rights.[4]

---

[4] To the extent plaintiffs attempt to challenge the fact that plaintiffs' entire publications were censored on the basis that they contained censored material, courts have upheld the all-or-nothing rule, whereby prison officials withhold in its entirety any publication containing excludable material. *See Thornburgh*, 490 U.S. at 416. Here, mailroom staff are already required to process thousands of pieces of mail every week, giving evidence of the limited resources that support such decisions. (SOF 45)

Case 6:07-cv-03298-GAF   Document 130   Filed 04/29/13   Page 19 of 25

## VI. Due Process – Letting offenders view censored material.

Plaintiffs allege that their due process rights were violated when they were not allowed to view censored material for the purposes of challenging censorship. Plaintiffs' claim seems to allege a procedural due process claim.[5] In order to prevail on a procedural due process claim, plaintiffs must first

---

[5] To the extent plaintiffs attempt to allege a substantive due process claim, that claim also fails. To prevail on a claim of substantive due process, plaintiffs must prove that defendants' actions were "truly irrational" and "conscience shocking," in a constitutional sense. *Chesterfield Dev. Corp v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992); *see also Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 2000); *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). A showing that an individual's actions were arbitrary and capricious fails to meet the higher standard of "truly irrational" and "conscience shocking." *Martin v. City of Brentwood*, 200 F.3d 1205, 1206 (8th Cir. 2000). Plaintiffs' claims regarding not being shown the censored materials clearly do not meet the standards of a substantive due process claim. Furthermore, "[i]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989)). Here, plaintiffs bring their censorship claims under the First Amendment, and therefore state no substantive due process claim.

20

establish that they have been deprived a protected liberty or property interest. *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445-46 (8th Cir.1995). Protected liberty interests arise from one of two sources, the due process clause itself or the laws of the States. *Kentucky Dep't of Corr. V. Thompson,* 490 U.S. 454, 460 (1989). Second, plaintiffs must establish that they were deprived of that interest without sufficient process, or constitutionally adequate procedures. *Sipies v. Kofka*, 419 F.3d 709 (8th Cir. 2005). *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures.")  First, plaintiffs cannot establish that they were deprived of a protected liberty or property interest.  *See supra*. Second, plaintiffs cannot establish a constitutionally inadequate process.  *See Ping v. Raleigh*, 205 F.3d 1347 at 1 (8th Cir. 2000) (when plaintiff received notice of the censorship and was able to file grievances and appeals to parties not involved in the censorship, plaintiff was afforded adequate process under the due process clause) (citing *Procunier v. Martinez*, 416 U.S. 396, 417-419 (1974) (overruled on other grounds by *Thornburgh*, 490 U.S.401)).  Here, plaintiffs' mail was first reviewed by the mailroom staff and determined to require further review by the censorship committee.  (SOF 33-36)  Second, the censorship committee was required to reach a consensus as to whether

21

plaintiffs' mail should be censored. (SOF 37-38) Then, plaintiffs were notified of the censorship of their mail in a notice giving a general description of why the mail was censored. (SOF 38, 47-158) The censoring of plaintiffs' mail was effectuated under a policy giving specific criteria as to what mail should be censored. (SOF 33-39) Finally, plaintiffs were afforded the ability to appeal the censorships through the grievance process and filed numerous grievances related to the censorships. (SOF 46) Although plaintiffs were not personally allowed to view their censored mail, plaintiffs cannot show that their interests were not protected by this multi-step process and their ability to appeal the censorship.

MDOC officials concerns with the censored material include the images promoting criminal activity, violence, and inappropriate sexual activity. (SOF 47-152) Requiring MDOC officials to show the censored materials to the offenders would negate the ability of MDOC to censor those explicit images from offenders. Thus, plaintiffs do not request a viable solution that allows MDOC to address the valid penological interests of maintaining safety and security of the correctional institution.

## VII.   Equal Protection – Disparate treatment of inmates at other institutions.

To succeed on an equal protection claim, the offender must show that he is treated differently than a similarly situated class of offenders, that the

22

different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest. *Murphy v. Missouri Dep't of Corr.,* 372 F.3d 979, 984 (8th Cir. 2004). "The Due Process Clause does not mandate a 'lowest common denominator' security standard, whereby a practice permitted at one penal institution must be permitted at all institutions." *Wolfish,* 441 U.S. at 554.

Prison officials can exclude materials that are determined "to create an intolerable risk of disorder under the conditions of a particular prison at a particular time." *Thornburgh*, 490 U.S. at 417. Here, where the offenders' claims are not alleging they are members of a protected class, their claims are reviewed under the rational basis standard. *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996) (citations omitted). Assuming, *arguendo*, that plaintiffs could show that offenders at other correctional institutions were allowed access to these publications, defendants can still meet their burden of showing a rational basis for the censorship at SCCC. The censoring MDOC employees attested to the risks of disorder that caused them to censor the publications *in their own experience* (working at SCCC, a maximum security correctional institution). (SOF 40, 41, 44) Thus, those same conditions, which cause the officials to censor these publications at SCCC, may not exist at other institutions. Officials' judgments regarding safety and security are entitled to deference and may be limited to a particular prison at a particular

23

time with a limited budget (*See Thornburgh*, 490 U.S. at 417; *see Hosna*, 80 F.3d at 305 (citations omitted)); thus, there will likely be differences between different correctional institutions that are not violative of equal protection.

## CONCLUSION

WHEREFORE, defendants Bowersox, Missouri Department of Corrections, Cornell, Buckner, Roper, Fisher, Fahnestock, Kemna, Ballinger, Hadley, Rogers, Wade, Wilson, and Leeder pray that this court grant summary judgment in their favor and grant whatever other remedies this Court deems appropriate.

Respectfully Submitted,

**CHRIS KOSTER**
Attorney General

*/s/ James P. Emanuel, Jr.*
James P. Emanuel, Jr.
Assistant Attorney General
Mo. Bar. No. 64833
P.O. Box 899
Jefferson City, MO 65102
Phone       (573) 751-8869
Fax        (573) 751-9456
James.Emanuel@ago.mo.gov

ATTORNEYS FOR DEFENDANTS
MDOC, BOWERSOX, CORNELL,
BUCKNER, ROPER, FISHER,
FAHNESTOCK, BALLINGER,
KEMNA, HADLEY, WADE,
ROGERS, WILSON, LEEDER.

24

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2013, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system and I hereby
certify that I have mailed by United States Postal Service the document to
the following non CM/ECF participants:

> Michael A. Dean, #1102311
> Boonville Correctional Center
> 1216 East Morgan
> Boonville, MO 65233
> *Plaintiff Pro Se*

> Pat Edmonds, #1115819
> South Central Correctional Center
> 225 West Highway 32
> Licking, MO 65542
> *Plaintiff Pro Se*

*/s/ James P. Emanuel Jr.*
James P. Emanuel Jr.
Assistant Attorney General

25