IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. DEAN and PAT EDMONDS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 07-03298-CV-S-GAF ) |
| SUPT. MICHAEL BOXERSOX, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER

Presently before the Court is *pro se* Plaintiffs Michael A. Dean and Pat Edmonds's (collectively "Plaintiffs") Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) or, in the alternative, Plaintiffs' Notice of Appeal. (Doc. # 171). Defendants Supt. Michael Bowersox, Patricia Cornell, Don Roper, Ricky Fisher, Terrena Ballinger, Mike Kemna, Dwayne Kempker, Greg Hadley, Troy Wade, John – Rogers, Waylon Wilson, Kenneth Leeder, LaDonna M. Buckner, Princess Fahnestock, and Missouri Department of Corrections (the "Department") oppose.[1] (Doc. # 174). For the reasons set forth below, Plaintiffs' Motion is DENIED.

## DISCUSSION

### I. FACTS

Plaintiffs are inmates at the South Central Correctional Center (the "SCCC"). (Complaint, 5). The SCCC's censorship regulations prohibit incoming materials that: (1)

---

[1] Supt. Michael Bowersox, Patricia Cornell, Don Roper, Ricky Fisher, Terrena Ballinger, Mike Kemna, Dwayne Kempker, Greg Hadley, Troy Wade, John – Rogers, Waylon Wilson, Kenneth Leeder, LaDonna M. Buckner, Princess Fahnestock, and the Department are collectively referred to as "Defendants"

promote violence, including materials that provide technical information on the design, construction, or use of an instrument or device that could endanger institutional safety or security; (2) portray explicit sex acts; (3) portray illegal drugs or substances; or (4) contain "free" items. (Doc. # 179-9).

After Defendants censored several of Plaintiffs' magazines under these regulations, Plaintiffs brought a claim under 42 U.S.C. § 1983, alleging violations of their First Amendment rights. *Dean v. Bowersox*, 325 F. App'x 470, 471 (8th Cir. 2009). Plaintiffs alleged Defendants "had not properly applied the constitutional standards for obscenity or inflammatory materials" and had imposed their own personal moral views by selectively applying the regulations. *Id.* On December 6, 2007, the Court granted Defendants' Motion to Dismiss. (Doc. # 31). The Eighth Circuit reversed in part and remanded the case for further consideration of (1) the validity of the prison regulations prohibiting sexually explicit and violent material as applied to the publications at issue and (2) the validity, both on its face and as applied, of the prison regulation prohibiting "free" items. *Dean.* 325 F. App'x at 473. On August 29, 2013, the Court granted Defendants' Motion for Summary Judgment. (Doc. # 169).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment. "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e) . . . ." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citing *Innovative Home Health Care v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). Such a motion "serve[s] the limited function of correcting manifest errors of law or fact." *Id.* (quoting *Innovative Home Health*, 141 F.3d at 1286) (internal quotation marks omitted). Rule 59(e)

motions must not be used to "'introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.'" *Id*. (quoting *Innovative Home Health*, 141 F.3d at 1286).

## III. ANALYSIS

### A. Procedural Issues

In their Motion, Plaintiffs present a number of procedural arguments. First, they argue that because Defendants' Motion for Summary Judgment was filed one (1) day late, it should not have been considered. (Doc. # 171 ¶ 5). On March 29, 2013, the Court set the dispositive motion deadline for April 28, 2013. (Doc. # 119 ¶ 1). Defendants filed their Motion for Summary Judgment on April 29, 2013. (Doc. # 129). Although the Motion was technically untimely, the Court's decision to consider the merits of a dispositive motion filed one (1) day late does not constitute a manifest error. *See W.F.M., Inc. v. Cherry Cnty., Neb.*, 279 F.3d 640, 643 (2002) (noting it is within a district court's "considerable discretion" to consider untimely motions for summary judgment).

Next, Plaintiffs argue Defendants' Motion for Summary Judgment was excessively long. (Doc. # 171 ¶¶ 6-7). They claim they "did not believe this Court would allow this excessively long Motion . . . and, therefore, did not answer the motion as thoroughly as they would have if the motion had been filed in a proper fashion." (*Id.* ¶ 7). Further, they claim they "were prejudiced by being lulled into a false sense of security that Defendants would be required to follow court rules so that this . . . excessively long motion would not be granted." (*Id.*). Under Local Rule 7.0(f), "[s]uggestions in support of . . . a motion shall be no longer than 15 double-spaced typewritten rules . . . unless otherwise authorized by the Court." On April 24, 2013, Defendants requested an extra ten (10) pages for their Suggestions in Support of their Motion for

Summary Judgment, which this Court granted.  (Docs. ## 123, 124).  Defendants thereafter filed third twenty-five-page Suggestions in Support of their Motion for Summary Judgment.  (Doc. # 130).  Therefore, Defendants complied with the Local Rules and the Court's orders.  Thus, the Court did not commit a manifest error in allowing Defendants to file a twenty-five-page brief.

Plaintiffs also argue the Court erred by granting Defendants' Motion to File Exhibits Under Seal for In Camera Review.  (Doc. # 171 ¶ 8).  On April 25, 2013, Defendants requested permission to file for *in camera* review certain exhibits to be considered for their Motion for Summary Judgment, which the Court granted.  (Docs. # 125 ¶ 6; 126).  The Court has been unable to find any support for Plaintiffs' position that prison inmates should be allowed to review censored material.  In its brief, Plaintiffs cite to *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105 (4th Cir. 1996) and *Lane v. Lombardi*, No. 2:12-cv-4219-NKL, 2012 WL 5873577 (W.D. Mo. Nov. 15, 2012), two (2) cases involving challenges brought to prison censorship regulations brought by the sender, as opposed to the inmate-recipient, of censored publications.  (Doc. # 171 ¶ 26).  However, in actuality both cases contradict Plaintiffs' argument, while concomitantly supporting Defendants' position that allowing Plaintiffs to view the censored materials would "defeat[] the purpose of the original censorship of these items."  (Doc. # 125 ¶ 7).  For example, the court in *Lane* notes that "the sender is in a better position to challenge the censorship decision than the recipient, because the sender will actually know the content of the material," thereby acknowledging that the inmate-recipient would be unable to know the content of the censored material.  *Lane*, 2012 WL 5873577, at *5 (citing *Montcalm*, 80 F.3d at 109).  Thus, it was proper for the Court to allow Defendants to submit the materials for *in camera* review and the Court did not commit a manifest error in granting Defendants' Motion to File Exhibits Under Seal for In Camera Review.

Lastly, Plaintiffs argue the Court erred in dismissing Plaintiffs' Due Process claim as moot. (Doc. # 171 ¶ 28). Plaintiffs allege their "due process rights were violated because Defendants did not allow them to review the censored material during the grievance process and this lawsuit." (*Id.*). However, as discussed above, the Court properly allowed Defendants to submit the censored materials for *in camera* review. Moreover, elsewhere in their brief, Plaintiffs admit Defendants allowed them "a very limited viewing of the exhibits." (Doc. # 171 ¶ 26). Therefore, the Court did not commit a manifest error in dismissing Plaintiffs' Due Process claims as moot. Further, each of Plaintiffs' procedural arguments could have been raised by Plaintiffs prior to the entry of Judgment. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

**B.     Whether Each Regulation is Reasonably Related to Legitimate Penological Interests**

Prison "regulations are 'valid if [they are] reasonably related to legitimate penological interests.'"[2] *Abbott*, 490 U.S. at 413 (alteration in original) (quoting *Turner*, 482 U.S. at 87 (1987)). In determining whether prison regulations are related to legitimate penological

---

[2] In their brief, Plaintiffs cite *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled by Thornburgh v. Abbott*, 490 U.S. 401 (1989), for support that "the prison officials carry the burden of proving the need for censorship." (Doc. # 171 ¶ 9 (quoting *Procunier*, 416 U.S. at 413)). Plaintiffs argue the Court erred by placing the burden on Plaintiffs to demonstrate the regulations in question are not reasonably related to a legitimate penological objective. (*Id.* ¶ 9). However, *Martinez* has been overruled by *Abbott*. Moreover, even if the burden was on Defendants, their Motion for Summary Judgment was replete with arguments demonstrating why the prison regulations in question were reasonably related to legitimate penological interests. (*See generally* Doc. # 130, pp. 14-19).

Plaintiffs also argue the Court erred in failing "to review each individual magazine as a whole for content of some serious literary, artistic, political, or scientific value based on articles and editorial comments." (Doc. # 171 ¶ 30). However, prison regulations are "valid if [they are] reasonably related to legitimate penological interests." *Abbott*, 490 U.S. at 413 (alteration in original) (quoting *Turner v. Safley*, 482 U.S. 78, 87 (1987)) (internal quotation marks omitted). Accordingly, the Court did not commit a manifest error in reviewing the SCCC's regulations under the framework established in *Abbott*.

interests, a court considers four (4) factors:

> (1) whether there is a rational connection between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for the inmates to exercise the constitutional right; (3) what impact accommodating the right would have on prison inmates, personnel, and resources; and (4) whether obvious and easy alternatives exist.

*Dean*, 325 F. App'x at 472 (citing *Abbott,* 490 U.S. at 414-18).

When reviewing prison regulations that "implicate institutional security," courts are instructed to "accord great deference to the judgment and expertise of prison officials." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004). Moreover, prison regulations can be written based on potential penological interests and need not be in response to actualized, specific examples of harmful conduct. *See Prison Legal News v. Livingston*, 683 F.3d 201, 216 (5th Cir. 2012) (citing *Abbott*, 490 U.S. at 407) ("[P]rison policies may be legitimately based on prison administrators' reasonable assessment of *potential* dangers."); *Lyon v. Grossheim*, 803 F. Supp. 1538, 1553 (S.D. Iowa 1992) ("The court is not suggesting that a security disruption must occur before the officials' alleged security concerns will be deemed reasonable.").

### *1. Materials Promoting Violence*

Plaintiffs argue the Court erred in finding a magazine depicting how to make a "pong blaster deluxe" promoted violence. (Doc. # 171 ¶¶ 22, 26). Plaintiffs assert magazines discussing how to make weapons using materials or machinery unavailable to prison inmates "could not actually promote violence." (*Id.*). However, the magazine in question detailed how "pong blaster deluxe" could be created using a paper towel tube, a ping pong ball, hairspray, and a lighter, all items a prison inmate could conceivably obtain. (Doc. # 169, pp. 21-22). Plaintiffs argue the Court further erred because in its discussion of the magazine, the Court provided "inmates with all the basic technical information on the design, construction, and use of a pong

6

blaster deluxe." (Doc. # 171 ¶ 26). They argue "[t]he Court and Defendants seem to have the false belief that prison inmates are so uneducated and unknowledgeable that they would be unable to construct such a device by simple trial and error." (*Id.*). A prison can do nothing about the information and knowledge its inmates possess. However, regardless of whether inmates could construct such devices on their own, the SCCC need not allow publications detailing how to construct weapons that could threaten institutional security freely flow into the prison. Therefore, because censoring materials detailing how to construct such a "pong blaster deluxe" is reasonably related to a legitimate penological interest, the Court did not commit a manifest error in upholding Defendants' decision to censor the magazine.

Plaintiffs also argue the Court erred in finding Defendants properly censored other materials that Defendants found promoted violence. (*Id.* ¶ 24). They argue the materials in question were "not promoting violence" but instead promoted "a T.V. program, movie, book, and/or video game." (*Id.*). Further, they claim violent images are "equally available on television, in movies, in the library (through graphic novels), etc." (*Id.*). However, Plaintiffs arguments are unavailing, especially when considering the great deference the Court accords to prison officials in the area of prison regulations implicating institutional security. Therefore, the Court did not commit a manifest error in censoring these materials. Further, each of these arguments could have been raised by Plaintiffs prior to the entry of Judgment. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

### 2. *Materials Portraying Explicit Sex Acts*

Plaintiffs next argue the Court erred by upholding Defendants' censorship of eleven (11) magazines for portraying explicit sex acts. (*Id.* ¶ 23). Plaintiffs claim the Court erred because the particular magazines "do not visually and explicitly portray penetration." (*Id.*). After

reviewing the magazines, the Court found these eleven (11) magazines "visually portray sexual intercourse without explicitly portraying penetration." (Doc. # 169, p. 17). Thus, the Court found the eleven (11) magazines "still portray explicit sex acts or what appears to be penetration and therefore are censorable materials under the SCCC's guidelines." (*Id.*). Therefore, the Court did not commit a manifest error in finding Defendants properly censored these magazines. Further, this argument could have been raised by Plaintiffs prior to the entry of Judgment. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

### 3. *Materials Portraying Illegal Drugs*

Plaintiffs next argue the Court erred in concluding that censoring materials portraying illegal drugs was reasonably related to a legitimate penological interest. (Doc. # 171 ¶ 19). The Court concluded that there existed a rational connection between the censorship of materials depicting illegal drugs and Defendants' interest in deterring criminal activity and rehabilitating its inmates. (Doc. # 169, p. 13). Plaintiffs argue the Court erred by crediting Defendants' rationale that materials depicting illegal drags "are harmful to the rehabilitative interests of certain prisoners." (Doc. # 171 ¶ 19). Plaintiffs argue "[m]any of the magazines taken for [depicting illegal] drugs, when read, actually would aid in rehabilitations of inmates because many articles discuss health dangers, families divided, economic problems, etc., that result from illegal drug use." (Doc. # 171 ¶ 19). As support, Plaintiffs argue Defendants censored one (1) magazine containing an article about medicinal marijuana. (*Id.*). Even if the Court assumes this particular article did not promote criminal activity and would not be harmful to the rehabilitative interest of the prison, "a limited amount of inconsistency at the margins" of a censorship policy does not make the policy unreasonably. *Prison Legal News*, 683 F.3d at 221; *see Abbott*, 490 U.S. at 417 n.15 (determining that regulations may strike an acceptable balance between

inconsistency and over breadth). One (1) article does not constitute more than the allowable limited amount of inconsistencies at the margins. Therefore, the Court did not commit a manifest error in finding censoring magazines depicting illegal drugs was reasonably related to a legitimate penological interest.

Further, Plaintiffs argue the Court erred in finding Defendants properly censored four (4) magazines for depicting illegal drug use because the articles in question were articles "about the negative results of illegal drugs." (Doc. # 171 ¶ 26). In particular, Plaintiffs allege Defendants illegally censored an article discussing medical marijuana and an article about combating cocaine production in South America. (*Id.*). However, as the Court noted, Plaintiffs presented no evidence the articles in question discouraged drug use. (Doc. # 169, p. 21). In actuality, these publications violated the regulations since each contained depictions of illegal drugs. Therefore, the Court did not commit a manifest error in upholding Defendants' censorship of these magazines. Further, each of these arguments could have been raised by Plaintiffs prior to the entry of Judgment. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

   *4.   Materials Containing "Free" Items*

Plaintiffs next argue the Court erred in concluding that censoring "free" items was reasonably related to a legitimate penological interest. (Doc. # 171 ¶¶ 12, 14). They argue the Court erred when it accepted Defendants' rationale that "free" items, such as posters, could be used as currency or to create, conceal, or transport weapons or escape devices.[3] (*Id.*). Further,

---

[3] Plaintiffs also argue the Court erred when it footnoted, "It is unclear whether the ['free'] items [in question] are truly 'free' in the sense that they have not been paid for. For example, the posters in a *National Geographic* are arguably included in the subscription price of the magazine." (Doc. # 171 ¶ 12 (citing Doc. # 169, p. 9 n.5)). The Court's word choice is irrelevant to the underlying legal issues. The Court decided to continue using the word "free," regardless of whether the items were truly "free" in an economic sense, in order to maintain consistency with "the nomenclature articulated in the regulations." (Doc. # 130, p. 9 n.5).

Plaintiffs argue the Court erred in accepting Defendants' position that "free" items could lead to fighting and disruption. (*Id.* ¶ 14). However, Plaintiffs' arguments regarding why the regulation prohibiting "free" items is not reasonably related a legitimate penological interest are wholly conclusory. Thus, especially when considering the great deference the Court accords to prison officials in drafting censorship regulations, the Court did not commit a manifest error in ruling that censoring "free" items was reasonably related to a legitimate penological interest. Further, this argument could have been raised by Plaintiffs prior to the entry of Judgment.

Plaintiffs also argue the Court erred when it found Defendants uniformly applied the regulation against "free" items. (*Id.* ¶ 17). Plaintiffs allege that "inconsistencies [in applying the regulation] are common practice and typical." (*Id.*). However, the only example Plaintiffs present to demonstrate how the regulation was not uniformly applied was that four (4) pairs of 3-D glasses had been allowed into the prison library, while one (1) of Plaintiffs' magazines had been censored for containing 3-D glasses. (Doc. # 126 ¶ 29; s*ee* Affidavit of Brandi Curl, 1). However, as discussed above, "a limited amount of inconsistency at the margins" of a censorship policy does not make the policy unreasonable. *Prison Legal News*, 683 F.3d at 221; *see Abbott*, 490 U.S. at 417 n.15 (determining that regulations may strike an acceptable balance between inconsistency and over breadth). Namely, four (4) pairs of 3-D glasses does not constitute more than the allowable marginal inconsistency. Therefore, the Court did not commit a manifest error in finding Defendants uniformly applied their regulations against "free" items. Further, this argument was already raised prior to Judgment. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

---

Therefore, the Court's decision to refer to the items as "free," even if technically incorrect from an economic standpoint, does not constitute a manifest error.

### 5. *Plaintiffs' Proposed Alternatives*

Plaintiffs next argue the Court erred when it found Plaintiffs' proposed alternative – physically removing the portion of each magazine which violates the regulations, instead of confiscating the entire publication – would impose a more than *de minimis* burden on valid penological interest. (Doc. # 171 ¶ 21). Plaintiffs argue their proposed alternative would actually decrease administrative costs. (*Id.*). However, Plaintiffs provide no support for this contention. Plaintiffs further argue the Court created a "double standard" by requiring Plaintiffs, but not Defendants, to present evidence on the burden Plaintiffs' proposed alternative would impose on the SCCC. (*Id.*). However the burden is on Plaintiffs. *Turner*, 482 U.S. at 91 ("[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."). Therefore, the Court did not commit a manifest error in finding Plaintiffs' proposed alternative would impose a more than *de minimis* cost.

Plaintiffs also argue the Court erred when it failed to consider Plaintiffs' two (2) other proposed alternatives. (Doc. # 171 ¶ 21 (citing Doc. # 169, p. 14)). Plaintiffs' first proposed alternative, concerning magazines containing "free" items, was to "hold these magazines by the corner and allow [the "free"] items to drop out as they are intended to do." (*Id.*). Their second proposed alternative was to redact the objectionable portions by blackening them out with a marker. (*Id.*). The availability of alternatives is just one (1) of four (4) factors considered when determining the reasonableness of a regulation, and a proposed alternative does not alone support a finding that the censorship was unreasonable. *See Turner*, 482 U.S. at 90. Plaintiffs are mistaken in suggesting the Court did not consider Plaintiffs' proposed alternatives. Further,

11

Plaintiffs have presented no evidence their proposed alternatives would not impose a more than *de minimis* cost to valid penological interests. *See id.* at 91. In fact, requiring Defendants to redact the offending portion of each magazine with a black marker would likely impose a large cost in time and resources to the SCCC. Therefore, the Court did not commit a manifest error in finding that Plaintiffs did not introduce any alternatives to the prison regulation. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

C. **Regulations at Other Prisons**

Plaintiffs also argue the Court erred by not considering how other institutions within the Department censored magazines. (Doc. # 171 ¶ 13). They argue the Court erred in its conclusion that Defendants established a rational basis for the prison regulations, without considering that inmates at other maximum security prisons are subject to different, and allegedly less restrictive, censorship regulations. (*Id.* ¶ 29). Plaintiffs allege "Defendants should have been required to say what conditions exist at [the] SCCC that do not exist at other maximum security institutions so that [the] SCCC requires different censorship standards than these other institutions . . . ." (*Id.*). However, it is rational for a prison regulation to be based on "the conditions of a particular prison at a particular time." *Abbott*, 490 U.S. at 417. Therefore, the Court did not commit a manifest error by not specifically requiring Defendants to delineate the differences between the SCCC and other maximum security prisons. Further, this argument could have been raised by Plaintiffs prior to the entry of Judgment. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

D. **Defendants' Liability**

  1. *The Department's Liability*

Plaintiffs also argue the Court erred when it found that "because Plaintiffs' claim against

the Department is brought under § 1983, the Department is entitled to judgment as a matter of law." (*Id.* (citing Doc. # 169, p. 7)). There is no error in finding the Department is entitled to judgment as a matter of law: Eighth Circuit precedent establishes that the Department is not a "person" subject to liability under § 1983. *Pointer v. Mo. Dep't of Corr.*, 46 F. App'x 385, 386 (8th Cir. 2002) (citation omitted). Therefore, the Court did not err in determining the Department was entitled to judgment as a matter of law. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

### 2. *The Individually Named Defendants' Liability*

Lastly, Plaintiffs argue the Court erred by failing to consider each individual Defendants' liability. (Doc. # 171 ¶ 31). Plaintiffs claim the Court failed to distinguish between the individual Defendants and the Department and between the regulations themselves and the Defendants' application of the regulations. Further, Plaintiffs claim that the individual "Defendants were acting against established Department of Corrections' policies" by censoring articles that should actually be allowed. (*Id.* ¶¶ 11, 18, 20). They argue the Court "ignore[d] the fact that Defendants are not following the Departments' censorship guidelines but are making up their own rules based on their personal prejudice and opinions" and that the individual Defendants "personally . . . violate[d] [the Department's] policies in order to unconstitutionally censor and seize Plaintiffs' personal property." (*Id.* ¶¶ 13, 18).

In determining whether an individual Defendant is entitled to immunity, the Court first considers whether a constitutional deprivation has been established. *See Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998). If the Court finds Plaintiff failed to allege a constitutional deprivation, the qualified immunity inquiry ends and the Defendants are entitled to immunity. *See id* at 1052 (citing *Thomas v. Hungerford*, 23 F.3d 1450, 1452-54 (8th Cir. 1994)).

As discussed above, there is simply no evidence that anyone violated Plaintiffs' constitutional rights. Thus, because Plaintiffs failed to establish a deprivation of a constitutional right, Defendants were immune from liability. *See Weiler*, 137 F.3d at 1052 (citing *Thomas*, 23 F.3d at 1452-54). Because Defendants were immune from liability, the Court did not commit a manifest error in not considering each individual Defendants' liability. Accordingly, Plaintiffs fail to demonstrate a basis for relief under Rule 59(e).

## **CONCLUSION**

Under Rule 59(e), Plaintiffs fail to demonstrate the Court committed any manifest error of law or fact. Further, many of Plaintiffs' arguments could have been raised prior to the entry of Judgment. Thus, amending or altering judgment is not warranted. For these reasons and the reasons set forth above, Plaintiffs' Motion is DENIED.

**IT IS SO ORDERED.**

                                                   s/ Gary A. Fenner
                                                   Gary A. Fenner, Judge
                                                   United States District Court

DATED: November 19, 2013